IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IDRISSA TRAORE, | § | |
| #57319-177, | § | |
| Movant, | § | |
| | § | No. 3:21-cv-2999-N (BT) |
| v. | § | No. 3:18-cr-00290-N-2 |
| | § | |
| UNITED STATES of AMERICA, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Federal prisoner Idrissa Traore (Movant) filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. ECF No. 1. The District Court referred the resulting civil action to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the Court should deny Movant's Section 2255 motion, as well his motions to file a supplemental claim under Federal Rule of Civil Procedure 15(d). ECF No. 21; ECF No. 23.

**Background**

Movant was a member of a fraudulent tax return conspiracy. Doc. 105-1 at 6-17.[1] From 2014-2018, Movant and other conspirators, including his codefendant,

---

[1] Citations to the docket sheet in Movant's Section 2255 case are preceded with "ECF No." Citations to the docket sheet in Movant's criminal case are preceded with "Doc." The background facts are taken from Movant's presentence report (PSR).

used stolen identities to submit fraudulent income tax returns to the IRS. Doc. 105-1 at 16-17. Movant opened bank accounts at multiple financial institutions using aliases to receive refunds from the fraudulent returns. Doc. 105-1 at 17. One-hundred and fifty-nine fraudulent tax returns were filed, garnering over $1,000,000 in refunds. Doc. 105-1 at 17-18.

A grand jury indicted Movant on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, four counts of wire fraud in violation of 18 U.S.C. § 1343, and four counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. §§ 981(a)(1)(C) and 2. Following the denial of his suppression motion, Movant pleaded guilty to all counts pursuant to a written plea agreement by which he waived his right to appeal, except as to the denial of the suppression motion, and waived his right to collateral review under 28 U.S.C. §§ 2241 and 2255 except (1) to challenge the voluntariness of his guilty plea or waiver of rights, or (2) to bring a claim of ineffective assistance of counsel. Doc. 90 at 7.

Movant appealed the denial of his suppression motion, but the Fifth Circuit affirmed. Doc. 133; Doc. 134. Movant then filed this motion to vacate, set aside, or correct his sentence. ECF No. 1. He makes the following claims for relief:

1. His counsel was ineffective for not communicating the expiration date of an alleged plea offer that would have limited his sentence to five years (Claim 1).

2. His plea was involuntary because the District Court violated Federal Rule of Criminal Procedure 11 by engaging in plea negotiations (Claim 2).

3. His counsel was ineffective for (a) failing to investigate the immigration consequences of a guilty plea; (b) failing to negotiate a plea for a non-deportable offense; and (c) failing to advise Movant of the immigration consequences if he were convicted (Claim 3).

ECF No. 1; ECF No. 14 at 8. The Government responded. ECF No. 11. Movant filed a reply and expanded the record with further affidavits. ECF No. 16; ECF No. 17. He also filed motions for leave to file a supplemental claim under Federal Rule of Civil Procedure 15(d). ECF No. 21; ECF No. 22; ECF No. 23.

## Legal Standards and Analysis

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

1. Movant's ineffective assistance of counsel claims (Claims 1 and 3) fail under *Strickland*.

Movant claims that his trial counsel was ineffective. To prevail on a claim of ineffective assistance of counsel (IAC), Movant must show: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense so gravely as to deprive him of a fair trial. *Strickland v. Washington*, 466

3

U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Id.* at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Under *Strickland*, a court's review of counsel's performance should be "highly deferential." *Id.* This is so because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Id.* And "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *see also United States v. Scott*, 11 F.4th 364, 373 (5th Cir. 2021) (recognizing there are "countless ways to provide effective assistance in any given case") (quoting *Strickland*, 466 U.S. at 689).

To demonstrate prejudice, the movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### a. Failure to communicate plea offer

In his first claim for relief, Movant claims that his counsel was ineffective for not communicating the expiration date of a plea offer. ECF No. 1 at 4. Movant claims that his counsel told him that the Government was offering him a zero-to-five-year plea offer—the same deal offered to his co-defendant—but did not give him a copy of the plea agreement to look over and advised him that he reject it. When Movant decided to accept the offer, he could not reach his counsel, and, when he did, his counsel informed him that the offer expired. ECF No. 1 at 4. Movant claims that, had his counsel told him of the plea offer's expiration date, he would have timely accepted it instead of the plea offer he ended up taking, which was less favorable. ECF No. 1 at 4.

Initially, by pleading guilty to the offense, Movant waived all non-jurisdictional defects preceding the plea. United States v. Owen, 996 F.2d 59, 60 (5th Cir. 1993). This includes those claims for ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. See United States v. Glinsey, 209 F.3d 386, 393 (5th Cir. 2000).

Here, Movant does not argue that his counsel's failure to effectively communicate an earlier plea offer rendered a subsequent one involuntary and it is not apparent how that would be the case. Movant knew about the lapsed offer when he accepted the subsequent one and proceeded anyways. Therefore, this claim is waived.

Alternatively, it is meritless. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). When a defendant claims that his counsel's error leads to the rejection of a plea offer, the defendant must show that, but for the ineffective advice of counsel, there is a reasonable probability that: (1) the defendant would have accepted the plea; (2) the prosecution would not have withdrawn it in light of intervening circumstances; (3) the court would have accepted its terms; and (4) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

The Government argues that Movant cannot show that his counsel failed to effectively communicate the terms of a formal plea offer because he cannot show that there was such an offer. Movant's description of the supposed plea offer is too vague: it is unclear to what charge(s) he would have pleaded guilty, the facts necessary to support the conviction under that or those charge(s), whether the offer would have permitted him to retain his right to appeal the suppression issue, or any "single other material term of the offer, including—importantly here—its expiration date." ECF No. 11 at 8. Further, continues the Government, while Movant attached affidavits from his wife and two family members showing the existence of a plea offer, the affidavits do not describe the offer's basic terms, nor

6

do they establish that the affiants were eyewitnesses to the supposed plea offer, which is fatal to their utility under circuit law.

The Court agrees. While Movant filed a subsequent affidavit (ECF No. 16) that addressed some of the vagueness issues (he claims, for example, that the plea offer was the same one that the Government offered to his co-defendant, a zero-to-five-year deal for "one (1) Count/charge of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371") even with these additional details, there is still no reliable third-party evidence to support the plea offer's existence. The affidavits from Movant's wife and family members (ECF No. 1 at 16; ECF No. 5 at 3-7) show that the affiants were not eyewitnesses to the events in question and Movant simply told them secondhand about the alleged plea agreement, which is "fatal to [their] value as independent indicia." *United States v. Franks*, 397 F. App'x 95, 101 (5th Cir. 2010) (per curiam) (citing *United States v. Merrill*, 340 F. App'x 976, 978-79 (5th Cir. 2009) (per curiam)) ("However, even if the record were expanded to include the affidavit, it would not provide independent indicia of the likely merit of Merrill's claims as it does not describe with any specificity where or when the alleged promise by counsel was made, and, more fatally, it does not indicate that Brown was in fact an eyewitness to any promise made by counsel directly to Merrill.") (citing, in turn, *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Discarding those affidavits, the only evidence supporting the existence of the plea offer is Movant's own self-serving affidavit, which is insufficient to warrant an

evidentiary hearing. *Merrill*, 340 F. App'x at 978. Because Movant fails to establish that there was formal plea offer for zero-to-five years, he cannot succeed on this IAC claim.

But even if Movant could show the existence of such a plea offer, he still fails to show prejudice under *Lafler*. He does not establish that he would have accepted the plea offer in a timely fashion. Importantly, Movant never says what the expiration date of the alleged offer was. While he eventually decided to accept the offer after consulting with his family, he initially hesitated, insisting that his counsel "weed out discrepancies outlined in the factual resume." ECF No. 1 at 14. Because the expiration date of the offer is unknown, whether the offer would have been available by the time Movant accepted it is also unknown.

And Movant also fails to allege that the Court would have accepted the terms of the alleged plea offer, which is a requisite under *Lafler*. As the Government notes, none of the crimes for which Movant was charged carried a five-year maximum sentence, so the only way that Movant could have gotten a zero-to-five-year sentence was a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which the Court is not required to accept. It is not a given that the Court would have accepted such a plea agreement here, where Movant suggests there were "inaccuracies" in the factual resume with which he took issue and where the PSR indicates that he had a manager or supervisory role over his co-defendant who received the zero-to-five-year deal. Doc. 105-1 at 18.

8

Because he fails to show beyond his own conclusory, self-serving testimony that a zero-to-five-year plea offer was on the table, and because he fails to show that, even if it was, he would have accepted the offer before it expired and that the Court also would have approved it, Movant's IAC claim that his counsel failed to effectively communicate a plea offer is meritless and should be denied.

### b. *Failure to negotiate a plea for a non-deportable offense*

Movant claims that his counsel was ineffective because he: "(1) failed to investigate the immigration consequences of pleading guilty to the instant offense; (2) failed to seek an immigration safe disposition of Movant's case; and (3) failed to advise Movant of the succinct, clear and explicit legal consequences if Movant was convicted." ECF No. 14 at 5. Instead, his counsel, without consulting with an immigration specialist, merely advised him that he "could be deported," which was an understatement, as Movant later realized that his deportation would be automatic. ECF No. 1 at 7. Movant avers that reasonable counsel could have negotiated a plea to a non-deportable offense and maintains that, had he known that his deportation was a certainty, he would have gone to trial.

Counsel's failure to advise a lawful permanent resident alien of likely deportation implicates the Sixth Amendment right to effective assistance of counsel. *United States v. Kayode*, 777 F.3d 719, 723 (5th Cir. 2014) (citing *Padilla v. Kentucky*, 559 U.S. 356 (2010)). Here, Movant's vague descriptions of what, specifically, his counsel told him, weigh against a showing of ineffectiveness, as the Court is unable to gauge the advice under *Strickland*. But even assuming

ineffectiveness, Movant must still show prejudice, which, as explained below, he fails to do.

"To prove prejudice for an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Bond v. Dretke,* 384 F.3d 166, 167-68 (5th Cir. 2004) (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)) (internal quotation marks omitted). So here, Movant must show that he would have gone to trial on a deportable offense.

The Fifth Circuit has identified a number of factors that are relevant in determining whether a defendant would have proceeded to trial if he had known of the likely immigration consequences of his plea including, but not limited to, the evidence supporting the defendant's assertion that he would have gone to trial on a deportable offense, his likelihood of success at trial, the risks he would have faced at trial, his representation about his desire to retract his plea, his connections to the United States, and the district court's admonishments. *Kayode,* 777 F.3d at 725.

Most of those factors weigh against Movant. To start, he never states under oath that he would have insisted on going to trial on a deportable offense. In fact, the record evidence belies such an insistence. His signed plea agreement states that "[u]nder federal law, a broad range of crimes are removable offenses" and "for purposes of this plea agreement, the defendant assumes the offense is a removable

offense." Doc. 90 at 4. By signing the agreement, Movant affirmed that he wanted to plead guilty, "regardless of any immigration consequences . . . even if the consequence is the defendant's automatic removal from the United States." Doc. 90 at 4. And at his rearraignment, Movant confirmed that he understood that his conviction could result in deportation. Doc. 129 at 11. Such "solemn declarations in open court carry a strong presumption of verity," *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009) (internal quotation marks and citation omitted), and Movant has not offered anything to disrupt that presumption. Thus, there is no evidence supporting Movant's claim that he would have insisted on going to trial on a deportable offense; there is instead evidence to the contrary.

Nor has Movant demonstrated a likelihood of success at trial. At trial, the Government contends that it would have introduced evidence that Movant possessed personal identifying information, fraudulent identification cards, and bank records for 66 bank accounts that received fraudulent tax refunds. Doc. 105 at 12. The evidence would have shown that Movant's codefendant transferred money from some of these accounts to Movant's own bank account. Doc. 105 at 13. Text messages between Movant and his codefendant would have established that the pair were involved in a fraudulent tax return scheme. Doc. 105 at 13-16.

In response, Movant argues that he would have prevailed at trial because he "had no knowledge regarding the bank materials, personal identification cards and other informations [sic]" that were found in his garage because his coconspirator

put them there without his knowledge. ECF No. 16 at 7. As for the text messages, Movant claims that these came from someone else's phone. ECF No. 16 at 7.

But because Movant points to nothing besides his own sworn testimony to support his claims, he has not shown that he was likely to succeed at trial, and this weighs against a showing that he would have proceeded to trial on a deportable offense. *Kayode*, 777 F.3d at 726 ("Kayode's apparent defense to these charges was that the checkbooks, mail, and other materials belonged to someone else and that he was only 'a minor participant in the events of which [he had] been accused. So minor, [he was] not sure that [his] role would have even deemed indictment or prison time.' Other than his own sworn testimony, Kayode does not point to any additional evidence that would support his defense. Based on this record, Kayode has not shown that he was likely to succeed at trial, and this factor thus weighs against finding prejudice.").[2]

_____

[2] Movant claims that he asked his counsel to "subpoena [his] personal iphone in order to show the pattern of [his] texting format (the format in which [he] writes messages and [his] choice of words)." ECF No. 16 at 8. This, according to Movant, would have proven that he was not the person that sent the incriminating text messages. But Movant does not indicate that this was ever done. He does not attach to his filings any such records or expert analysis interpreting his text messages. Movant also claims in passing that his counsel was ineffective for not subpoenaing "exculpatory evidence" like his travel itinerary that would have put him out of the country when pertinent "bank account transactions" were taking place. ECF No. 16 at 9. To the extent that this is an additional IAC claim, Movant waived it by pleading guilty. *Perez-Estrada v. United States*, 2023 WL 3689625, at *2 (N.D. Tex. May 5, 2023), *rec. accepted* 2023 WL 3689986 (N.D. Tex. May 26, 2023) (knowing and voluntary guilty plea normally waives "all non-jurisdictional defects relating to events preceding the guilty plea") (collecting cases).

As for the risks of trial as opposed to a plea agreement, the plea agreement in this case was less risky than a trial because it allowed Movant to get a two-point sentence reduction for accepting responsibility; and it also reserved his right to appeal the denial of his suppression motion, the success of which would allow him to withdraw his guilty plea. The risk inherent in a trial as opposed to the plea agreement weighs against a showing that Movant would have proceeded to trial on a deportable offense.

Next, the Court considers Movant's connections to the United States. "Significant ties to the United States could make a rational defendant less likely to accept a plea agreement that would result in deportation, and more likely to risk trial, in hopes of avoiding certain 'exile' from the United States." *Kayode*, 777 F.3d at 727 (citations omitted). According to the PSR, Movant has lived in the United States since 2003. Doc. 105-1 at 24. He has a wife and children in the United States (although many of his family members still live in Gabon). Doc. 105-1 at 24, 26. While not establishing prejudice, these facts, viewed in a vacuum, might show that it would be more reasonable for Movant to risk trial rather than face deportation. Thus, this factor weighs in favor of Movant's claim that he would have proceeded to trial on a deportable offense.

Another factor the Fifth Circuit considers is whether the defendant "previously moved to withdraw his guilty plea." *Kayode*, 777 F.3d at 727 (citing *Gonzalez v. United States*, 722 F.3d 118, 132-33 (2d Cir. 2013)). This is relevant because it shows "that a rational defendant in [the defendant's] circumstances

13

would have rejected the plea agreement and proceeded to trial, and thus should be a factor in the court's prejudice inquiry." *Id.* Here, Movant did not attempt to withdraw his guilty plea before pleading guilty; therefore, this factor weighs against a finding that Movant would have proceeded to trial on a deportable offense.

Finally, the Court considers whether the defendant received any judicial admonishments regarding the possible deportation consequences of a plea. As noted, Movant received judicial admonishments at his rearraignment hearing. Doc. 129 at 11-12. Thus, this factor weighs against a finding that Movant would have proceeded to trial on a deportable offense.

Because all but one of the pertinent factors weighs against a finding of prejudice, the Court concludes that Movant cannot show that he would have insisted on going to trial on a deportable offense. His claim that his attorney was ineffective for failing to investigate and explain the immigration consequences of his plea is meritless and should be dismissed.

Further, to the extent that Movant is claiming that his counsel was ineffective for not negotiating a plea for a supposedly non-deportable offense—specifically 18 U.S.C. § 641, Theft of Government Funds—he also fails to show prejudice because he does not allege that the Government would have offered him such a plea bargain. At best, he alleges, in conclusory fashion and without explanation, that his attorney should have been able to make such a bargain

happen. Conclusory allegations like that are insufficient to warrant habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)

> 2. Movant fails to show that his plea was involuntary because of judicial coercion.

Movant claims that the District Court violated Federal Rule of Criminal Procedure 11(c)(1) by inserting itself into plea negotiations. The Court agrees with the Government that this claim is procedurally barred because Movant did not raise it on direct appeal.

Rule 11(c)(1) provides that the Court must not participate in plea agreement discussions. FED. R. CRIM. P. 11(c)(1). Claims that the Court violated Rule 11 by improperly participating in plea negotiations may generally be raised on direct appeal. *See United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004); *United States v. Aguilar*, 697 F. App'x 361, 362 (5th Cir. 2017) (per curiam). Claims that could have been but were not raised on direct appeal may not be raised on collateral review unless the movant shows cause for the procedural default and actual prejudice because of the error. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).

Here, Movant did not raise the Rule 11 claim on direct appeal. He insinuates that it was not raised due to the incompetence of his counsel, which the Government agrees might constitute cause. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Nevertheless, even assuming cause, Movant cannot show prejudice, as this claim is meritless.

Movant takes issue with the following exchange at his pretrial conference:

The Court: We're at a point in the process where typically most defendants decide that actually going to trial is not an optimal outcome for them. Typically, when there's a motion to suppress, if its granted and the case is dismissed; if it's denied, the defendant typically will ask for a conditional guilty plea and avoid the trial, avoid the loss of points for acceptance, and get a second opinion on the motion to suppress, but that apparently is not what our Defendant is choosing to do. Am I understanding that correctly?

Counsel: Yes, Your Honor, I believe you are. And I also just would note for record purposes the Defendant is present. There had been conversations with the Government to that end. I believe the Government's position is that they would not necessarily be willing to offer him that type of guilty plea at the moment. However, I can also say that I'm not willing to say that the Defendant will be willing to take the guilty plea at the moment either. And if I mischaracterized, I'll let Mr. Bunch correct me.

The Court: Okay. The other thing I've seen when, for reasons I don't understand, the Government didn't want to do that, is I've seen a defendant—and I may have the vocabulary wrong—stipulate factual guilt but contest legal guilt and there's a two minute trial where I adjudicate them guilty, and on that basis they don't lose acceptance of responsibility and can still go ahead and appeal the motion to suppress ruling. So, I mention that as—so that if the problem is the Government is not open to the conditional guilty plea, there may be another way to skin that cat if the Defendant wants to do it. If the Defendant doesn't want to, it's academic.

Doc. 128 at 2-3.

The Fifth Circuit has characterized Rule 11's prohibition of judicial involvement as a "'bright line rule,' and 'an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process.'" *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013) (citations omitted). There are two reasons for the rule. "First, 'it serves to diminish the possibility of judicial coercion

16

of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea.'" *Id.* (quoting *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993)). Second, judicial involvement in plea negotiations "is likely to impair the trial court's impartiality," as "[t]he judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement . . . and may therefore resent the defendant who rejects his advice." *Id.* at 571.

With those principles in mind, the Court's comments here are not like those cases in which the Fifth Circuit found a Rule 11 violation. For example, the Fifth Circuit found a violation of Rule 11 when the district court engaged in a "repeated and extensive description of adverse consequences to other defendants who rejected pleas" and discussed the "success story" defendant who accepted a plea. *See United States v. Hemphill*, 748 F.3d 666 (5th Cir. 2014). In *United States v. Daigle*, the Fifth Circuit held that the district court violated Rule 11 by stating in an off-the-record conference that it "would most likely follow any sentence recommendation by the government." 63 F.3d 346, 348-49 (5th Cir. 1995). In *United States v. Rodriguez*, the Fifth Circuit found a Rule 11 violation because the district court stated that "[r]ight now [the defendant is] looking at five years minimum and in about 30 minutes [i.e. if he declines to plead guilty] he's going to be looking at ten years minimum," which "indicated a belief that if [the defendant] opted for a trial, he would likely be found guilty." 197 F.3d 156, 158-160 (5th Cir. 1999). In *United States v. Pena*, the Fifth Circuit found a rule 11 violation where the district court suggested during a status conference that the defendant resolve

other litigation before entering a guilty plea because "the district court's statements connote[d] *the possibility* that the court had already made a determination as to Pena's guilty in the instant offense and preferred a guilty plea." 720 F.3d 561, 572 (5th Cir. 2013) (emphasis in original); *see also* United States v. Ayika, 554 F. App'x 302, 305-306 (5th Cir. 2014) (per curiam) (finding Rule 11 violation where the court told the defendant multiple times that it would sentence him to a below-guidelines sentence if he pleaded guilty and said that the defendant's "best chance" was to plead guilty and that doing so was his opportunity to "cut [his] losses short").

Here, by contrast, at no time did the Court say anything that could be construed as a prejudgment of guilt. The Court simply advised Movant of his options given the recently denied motion to suppress. Nor could the comments be construed as coercing any action on Movant's part, as the Court affirmed that whether to conditionally plead guilty or proceed to trial was up to Movant.

Movant cannot show any likelihood of success on his Rule 11 claim; therefore, he fails to show prejudice from his counsel's failure to raise it on direct appeal, the claim is procedurally defaulted, and Movant is not entitled to habeas relief in relation to it.

3. Movant's motions to supplement should be denied.

Movant filed two motions to supplement his claims pursuant to Federal Rule of Civil Procedure 15(d). He claims that the District Court, in assessing a special offense characteristic, relied on the Guideline commentary that defined "loss" in

the applicable Guideline to include the monetary loss that Defendant intended to inflict as opposed to the actual loss that Defendant caused, an interpretation that the Third Circuit recently rejected in *United States v. Banks*, 55 F.4th 246 (3d Cir. 2022). *See* ECF No. 21; ECF No. 23.

Federal Rule of Civil Procedure 15 is applicable to Section 2255 proceedings. *See* Rules Governing Section 2255 Proceedings, Rule 12; 28 U.S.C. § 2242; *United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002). Federal Rule of Civil Procedure 15(d) governs the supplementation and amendment of pleadings in federal court. It provides that:

> [o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). "A supplemental pleading may bring in new claims when the subsequent allegations stem from the original cause of action." *Mangwiro v. Napolitano*, 939 F.Supp.2d 639, 647-48 (N.D. Tex. 2013) (citing *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1194 (5th Cir. 1982)), *vacated on other grounds by* 460 U.S. 1007 (1983). "Judicial decisions to grant or deny Rule 15(d) motions to supplement pleadings are generally based on the same factors of fairness courts weigh when considering motions to amend pleadings under Rule 15(a)." *Tomasella v. Div. of Child Support*, 2021 WL 3710659, at *2 (N.D. Tex. Aug. 20, 2021) (citing *Hyde v. Hoffman-La Roche Inc.*, 2008 WL 2923818, at *3 (N.D.

Tex. July 30, 2008)). Those factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Schiller v. Phys. Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted). An amendment or supplement would be futile when the amended or supplemented complaint would fail to state a claim upon which relief could be granted. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (collecting cases).

Turning to the proposed claim, under the Guidelines applicable to Movant's offense, the enhancement to the base offense grows with the monetary amount of "loss." *See* USSG § 2B1. In calculating Movant's offense level computation, the PSR, in accordance with commentary interpreting the word "loss" in the Guidelines, used the greater of the "actual and intended loss" monetary amounts, which in this case was the intended loss. Doc. 105-1 at 20; *see also* USSG § 2B1.1 comment (n.3).

Movant claims that this was incorrect under a recent Third Circuit decision, *Banks*. There, the Third Circuit, on direct appeal, rejected the Sentence Commission commentary's definition of "loss" because the ordinary meaning of the word "loss" only encompasses actual loss. *Banks*, 55 F.4th at 258.

This proposed claim lacks merit for multiple reasons. First, Movant waived his right to collaterally challenge his conviction or sentence with this kind of claim. Doc. 90 at 7. *See*, *e.g.*, *United States v. Burns*, 770 F. App'x 187, 190 (5th Cir. 2019) (per curiam) (noting that "[a]n informed and voluntary waiver of post-conviction

20

relief generally bars such relief") (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam)).

Second, even if not waived, relief under Section 2255 is reserved for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)) (per curiam).

Here, Movant's claim is not premised on a constitutional violation but rather a misapplication of the Guidelines, so it is not cognizable through a Section 2255 motion. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (citations omitted) (determining that movant's claim that his sentence was improper because sentencing court misapplied the sentencing guidelines was not cognizable in a Section 2255 motion). In *United States v. Rodriguez-Castro*, 814 F. App'x 835, 838 (5th Cir. 2020) (per curiam), for example, the defendant waived his right to appeal and then brought a Section 2255 motion that argued that, in accordance with intervening jurisprudence from the Supreme Court, the district court misapplied the Sentencing Guidelines. Noting that the claim was "nonconstitutional" in character and that the defendant would have to show a "complete miscarriage of justice," the Fifth Circuit found that the defendant could not clear that high bar because the defendant's sentence was well below the statutory maximum, and it was not "unlawful or invalid" at the time it was entered.

*Id.* at 838 (citing *United States v. Addonizio*, 442 U.S. 178, 185-87 (1979); *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994); *Dozier v. U.S. Dist. Court for Northern Dist. of Florida*, 656 F.2d 990, 992 (5th Cir. Unit B 1981); § 2255(a)).

So too here. Movant's sentence of 121 months was well below the statutory maximum of 108 years. Even if the intended loss should not have been included in determining his Guideline range, the Guidelines are advisory, and Movant has not shown "that his sentence is unlawful or was invalid at the time it was entered." *Rodriguez-Castro*, 814 F. App'x at 838.

Because Movant's proposed supplemental claim is waived, not cognizable, or both, his motions to file a supplemental claim under Rule 15(d) should be denied as futile.

### Recommendation

The Court should deny Movant's Section 2255 motion (ECF No. 1), as well as his motions to file a supplemental claim under Rule 15(d) (ECF Nos. 21, 23).

SO RECOMMENDED.

July 28, 2023.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996)*.